# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

Dave Torgerson,

      Plaintiff,

Court File Number _____

v.

**COMPLAINT**

Dakota County Community Development Agency,

      Defendant.

Plaintiff Dave Torgerson had a Section 8 Housing Choice Voucher from Washington County HRA to subsidize his rent. Relying on HUD's portability rules, Mr. Torgerson transferred his voucher to the Dakota County CDA and rented a home in Eagan. Mr. Torgerson, who is severely disabled, was always able, pursuant to Federal Regulations, to have his ex-wife, Collette Torgerson, designated as his "Live-in Aide". Defendant, without legal justification, denied Mr. Torgerson's request to have his ex-wife again designated as his Live-in Aide. Now Mr. Torgerson has lost his Section 8 rental assistance because Collette Torgerson is providing him with the supportive services he needs to live independently. Mr. Torgerson seeks declaratory and injunctive relief allowing him to have a medically necessary Live-in Aide.

Plaintiff Dave Torgerson ("Torgerson") as and for his claims for relief against Defendant Dakota County Community Development Agency ("CDA") states as follows:

## PARTIES

1.     Plaintiff is a resident of Eagan, Dakota County, Minnesota. Plaintiff suffers from a severe form of a degenerative neuro-muscular disease called vasculitis mylitis. His primary source of income is Social Security Disability income in the amount of $1318 per

month.  He makes an additional $756 per year in employment income.  Plaintiff's address is 1901 Sapphire Point, Eagan, Minnesota 55122.

2.     Defendant CDA is a local government agency that administers HUD's Section 8 voucher program in Dakota County.  The CDA office is located at 1228 Town Centre Drive, Eagan, Minnesota 55123.

## JURISDICTION

3.     This Court has Jurisdiction over the federal questions and violations of federal law alleged herein under 28 U.S.C. §1331.

4.     This Court has jurisdiction over Plaintiff's civil rights claims under 42 U.S.C. §3613, 42 U.S.C. §1983 and 28 U.S.C. §1331.

5.     This Court has supplemental jurisdiction over Plaintiff's claim under the Minnesota Human Rights Act alleged herein pursuant to 28 U.S.C. §1367.

6.     The request for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

7.     The request for injunctive relief is authorized the Federal Rules of Civil Procedure, Rule 65.

8.     Plaintiff's claims arise in the State of Minnesota, so venue lies in this District Court pursuant to 28 U.S.C. § 1391.

## SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

Plaintiff realleges and incorporates by reference paragraphs 1 through 8.

9.     The Housing Choice Voucher Program is a federal rental subsidy program administered by HUD.  In turn HUD funds and regulates state or local governmental units called housing authorities which directly administer the program.

2

10.   In Dakota County, Defendant CDA is the housing authority responsible for administering the housing choice voucher program.

11.   Families who are participants in the program rent privately owned units that meet basic housing quality standards.  The housing authority inspects a unit, approves the unit and tenancy, then enters into a housing assistance payment contract with the owner.  The housing authority makes rent subsidy payments on behalf of the family.

12.   The rental subsidy is calculated based on a local payment standard which is the maximum subsidy the CDA will pay for a unit.  If the rent is less than the payment standard the family pays 30% of their adjusted income for rent.  If the rent is more than the payment standard the family may pay up to 40% of its income to equal the amount of rent exceeding the payment standard.

13.   One of the fundamental rights of Section 8 participants is the right to move ("port") to another jurisdiction with the voucher.  The Housing Act of 1937 as amended states a family who has a housing choice voucher  may move with continued assistance:

> Any family receiving tenant-based assistance under the subsection (o) of this section may receive such assistance to rent an eligible dwelling unit if the dwelling unit to which the family moves is within any area in which a program is being administered under this section.  42 U.S.C. §1437f(r)(1)(A).

14.   HUD is directed to establish procedures for the compensation of housing authorities who issue vouchers to families who chose to port.  42 U.S.C. §1437f(r)(3).

15.   HUD issued regulations that implement the right to port:

> A voucher-holder or participant family has the right to receive tenant based voucher assistance in accordance with the requirements of this part to lease a unit outside the initial PHA jurisdiction, anywhere in the United States, in the jurisdiction of a PHA with a tenant-based program under this part.  24 C.F.R.

3

§982.353(b).

16.   Numerous other regulations issued by HUD reaffirm the right to port.  See, e.g., 24
C.F.R. §982.1(a)(2) and (b)(1) ( families can seek units anywhere in the county); 24
C.F.R. §982.301(a)(2) (PHA may not discourage a family from choosing to live anywhere
in or out of PHA jurisdiction); 24 C.F.R. §982.353(f) (a family has "freedom of choice.")

17.   Federal Regulations that govern the Section 8 voucher program state as follows. "A
family that consists of one or more elderly, near-elderly or disabled persons may request
that the PHA approve a live-in aide to reside in the unit and provide necessary supportive
services for the family member who is a person with disabilities." 24 CFR. § 982.316 (a).

18.   If the family requests to have a live-in aide, "[t]he PHA must approve a live-in aide if
needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the
program accessible to and usable by the person with the disability."  24 CFR § 982.316
(a).

19.   A PHA is only authorized to refuse to approve a live-in aid if  the person (a) commits
fraud, bribery or any other corrupt or criminal act in connection with any federal housing
program, (b) commits drug related criminal activity or violent criminal activity; or (c)
currently owes rent or other amounts to the PHA or to another PHA in connection with
Section 8 or public housing assistance under the 1937 Act.  24 CFR §982.316 (b)(1), (2),
and (3).

20.   A live-in aid is "...a person who resides with one or more elderly persons or near-elderly
persons, or persons with disabilities, and who: (1) Is determined to be essential to the care
and well-being of the persons; (2) Is not obligated for the support of the persons; and (3)

4

Would not be living in the unit except to provide the necessary supportive services. 24 CFR §5.403.

## FACTS

Plaintiff realleges and incorporates by reference paragraphs 1 through 20.

21.     Mr. Torgerson is 51 years old.

22.     Mr. Torgerson first began having health problems in 1996. At that time, he was suffering from numbness in his legs, which could not be diagnosed.

23.     By June 2000, Mr. Torgerson was unable to walk without support. Mr. Torgerson was diagnosed at that time with a neuro-muscular condition known as vasculitic myelitis. In addition, he has severe aseptic vascular necrosis of his right arm, which prevents him from using that arm fully.

24.     In approximately 2008, Mr. Torgerson was also diagnosed with Guillain-Barré Syndrome, which further limits his mobility and impairs the use of his hands. Mr. Torgerson is confined primarily to a hospital bed in his home. He makes limited use of an electric wheelchair for appointments. All transfers to and from his bed are performed by Collette Torgerson with the use of a Hoyer lift.

25.     Mr. Torgerson and his ex-wife, Collette Torgerson divorced on April 25, 2002. Mr. Torgerson has stated that he wanted Collette to be able to "get on with her life because [his life] was very uncertain." Following their divorce, Mr. Torgerson and Ms. Torgerson lived separately in different residences.

26.     After their divorce, Mr. Torgerson learned that he would need a personal care attendant to help him with daily living and preventing falls and assisting if falls occurred. Collette

Torgerson had training as a nurse's aide.  Mr. Torgerson believed that she was ideally

suited to assist him in this capacity.  Mr. Torgeson retained Collette Torgerson as his

personal care attendant.

27.   Collette Torgerson was approved by the State to provide Mr. Torgerson with 80.5 hours

per week of personal care services.[1]  She resides in a second bedroom in Mr. Torgerson's

home so that she can provide round-the-clock care for Mr. Torgerson.

28.   Mr. Torgerson has been unable to maintain full-time employment since 1999.  He

receives Social Security Disability income in the amount of $1318 per month.

29.   Mr. Torgerson originally obtained a Section 8 rental assistance voucher on February 20,

2003 from the Metropolitan Council HRA.  He immediately transferred his voucher to

Washington County HRA.

30.   Both Metropolitan Council HRA and Washington County HRA approved Collette

Torgerson as Mr. Torgerson's live-in aide.

31.   Mr. Torgerson moved to 1901 Sapphire Point, Eagan, MN 55122 on April 1, 2007.  Prior

to moving to Eagan, Mr. Torgerson ported his voucher from Washington County HRA to

Dakota County CDA.  He completed all of the CDA's required move-in paperwork and

arranged to have his rental unit inspected, as required by HUD regulations.  At a meeting

with the CDA on March 16, 2007, Mr. Torgerson, as part of his request to the CDA for

approval of Collette Torgerson as a live-in aide, also completed a form provided by the

CDA called "Dakota County Live-In Aide Certification."  Mr. Torgerson provided

---

[1]Governor Pawlenty's unallotment resulted in the number of hours of care that Collette
Torgerson can be paid for to be capped at 275 per month effective July 1, 2009.

medical support required by the form in three separate documents: a March 12, 2007 letter from his doctor, Thomas Jacques, M.D; a March 26, 2007 fax of a Medical Assistance Home Care Service Plan; and a March 29, 2007 memorandum from Sally Knutson, R.N. of The Crystal Care Companies outlining the services performed by Collette Torgerson and the number of hours worked per week.

32.   Deborah Haugh, the CDA's Director of Housing Assistance, denied Mr. Torgerson's request to have Collette Torgerson serve as his live-in aide in a CDA internal memo dated April 1, 2007. She stated that she wanted to see Mr. Torgerson's divorce decree and that Mr. Torgerson had provided insufficient documentation that Collette Torgerson would not otherwise be residing in the unit.

33.   Mr. Torgerson submitted a letter to the CDA on April 10, 2007, describing why Collette Torgerson, because of her previous medical training, was suited to serve as his live-in aide, and the circumstances surrounding their divorce. He also provided a copy of the parties' divorce decree, as requested by the CDA.

34.   Mr. Torgerson's request to the CDA for approval of Collette Torgerson as a live-in aide was again denied by Deborah Haugh.

35.   Mr. Torgerson requested an informal hearing to challenge the CDA's denial of his request to have Collette Torgerson as his live-in aide. This hearing was held on May 23, 2007.

36.   The Informal Hearing Officer issued a decision dated June 11, 2007 and received by Mr. Torgerson's counsel on June 18, 2007, upholding the CDA's decision to deny Collette Torgerson as Mr. Torgerson's live-in aide. The Hearing Officer concluded that the information provided by Mr. Torgerson did not "fully confirm" the need for a live-in aid

7

and that Collette Torgerson did not meet the definition of a live-in aid.

37.　Through counsel, in an attempt to resolve this situation, Mr. Torgerson sent a letter to Deborah Haugh on July 5, 2007, asking her to reconsider the agency's decision. This letter was supported by an updated and more thorough letter from his doctor, Thomas Jacques, M.D.   Dr. Jacques concluded that due to his medical condition, Mr. Torgerson was not able to live independently alone and that if ongoing care was not available in his home, the next best option for him was to live in a nursing home type facility where staff is available on a 24 hour basis.

38.　On October 16, 2007 the CDA agreed to reconsider its decision denying Collette Torgerson as Mr. Torgerson's live-in-aide and "temporarily" authorized Collette Torgerson to be Mr. Torgerson's live-in-aide..

39.　The CDA then requested Mr. Torgerson to submit further documentation of his household expenses from January 2007 to December 2007.

40.　In response to the CDA's request, Mr. Torgerson supplied information about his household expenses.

41.　After receiving the information supplied by Mr. Torgerson, the CDA concluded without explanation that the information provided was not sufficient and, by letter dated October 23, 2008, notified Mr. Torgerson that his assistance would be terminated.

42.　Mr. Torgerson then requested an informal hearing which was granted and held on November 21, 2008.

43.　On December 9, 2008 the CDA's hearing officer overturned the CDA's decision to terminate Mr. Torgerson's housing assistance for failure to supply requested information.

8

44.     By letter dated December 10, 2008, the CDA notified Mr. Torgerson of its request for

        additional information to complete its re-certification and its intent to add Collette

        Torgerson as a member of Mr. Torgerson's household instead of approving her as a live-

        in-aide.

45.     On December 11, 2008, Mr. Torgerson requested a hearing regarding the CDA's decision

        not to approve Collette Torgerson as Mr. Torgerson's live-in-aide.

46.     On December 12, 2008, the CDA notified Mr. Torgerson that a hearing would not be

        possible regarding whether Collette would be allowed as a live-in-aide but would be

        possible only for the purpose of determining the amount of benefits that should be paid

        after Collette Torgerson's income was included as household income.

47.     Following a hearing on January 23, 2009, the CDA's hearing officer issued a decision

        dated February 19, 2009 concluding that despite Mr. Torgerson's assertion that he and

        Collette Torgerson had not lived together as husband and wife for 15 years, "it is the

        opinion of the hearing officer that the evidence supports a conclusion that Mr. Torgerson

        and Ms. Torgerson have a clear pattern of cohabiting, whatever their relationship may

        be."

48.     The CDA's hearing officer concluded that Mr. Torgerson's treating physician confirmed

        that a live-in caretaker is essential to Mr. Torgerson's well being.

49.     The CDA's hearing officer also concluded, however, that Mr. Torgerson had not provided

        sufficient information for her to conclude that Mr. Torgerson was not cohabiting with

        Collette Torgerson and had not provided sufficient information for her to conclude that

        Collette Torgerson would not be living in Mr. Torgerson's rental unit if this were not

9

necessary to provide Mr. Torgerson with the necessary supportive services.

50.     The CDA's hearing officer offered no specific evidence to support her conclusion that
        Mr. Torgerson was cohabiting with Collette Torgerson or that Collette Torgerson was
        living in Mr. Torgerson's rental unit for a purpose other than to provide Mr. Torgerson
        with the necessary supportive services.

51.     Nor did the CDA's hearing officer cite or reference any evidence as a basis for
        disregarding or discrediting Mr. Torgerson's assertion that he and Ms. Torgerson were
        not living together as husband and wife.

52.     Because the CDA and its hearing officer concluded that Collette Torgerson does not
        qualify as a live-in-aide, and is nonetheless living with Mr. Torgerson, it counted Collette
        Torgerson's income as part of Mr. Torgerson' household income. Because the inclusion
        of this income increased the level of Mr. Torgerson's household income to a level beyond
        that which allows him to be eligible to receive any rental assistance, the CDA has
        terminated his rental assistance.

49.     Mr. Torgerson and Collette Torgerson do not live together as husband and wife and do
        not have a romantic relationship.

50.     Mr. Torgerson and Collette Torgerson maintain their financial affairs separately.  Collette
        Torgerson is a signer on Mr. Torgerson's checking account for the purpose of enabling
        her to provide the supportive services needed for Mr. Torgerson.

51.     Collette Torgerson would not be living with Mr. Torgerson and need a separate bedroom
        in Mr. Torgerson's apartment except to provide the necessary supportive services.

52.     Mr. Torgerson's health and finances do not allow him to move at this time.

10

52. Defendant CDA, in denying approval of Plaintiff Torgerson's request for a live-in aide, has failed to assert any of the grounds authorized by 24 CFR §982.316(b) for denying such a request..

53. Defendant CDA's continuing refusal to grant Plaintiff Torgerson's request for a reasonable accommodation approving Collette Torgerson as his live-in aide has resulted, and will continue to result, in irreparable injury to Plaintiff if appropriate relief is not granted.

## FIRST CAUSE OF ACTION

### TITLE VIII, FAIR HOUSING ACT, DISCRIMINATION ON THE BASIS OF DISABILITY

Plaintiff Torgerson realleges and incorporates herein by reference paragraphs 1-42.

54. Plaintiff's rights have been violated by Defendant under 42 U.S.C. §3604(f) which prohibits discrimination on the basis of disability in housing.

55. Under this law Plaintiff is entitled to protection as a disabled person, including the right to a reasonable accommodation, because he has an impairment that substantially limits a major life activity.

56. Plaintiff's right under 42 U.S.C. §3604(f) is implemented by 24 CFR §982.316, which requires Defendant to approve a live-in aide if needed as a reasonable accommodation to make the Section 8 program accessible to and useable by Plaintiff.

57. Defendant is aware of Plaintiff's disability.

58. Plaintiff requested, and under the Fair Housing Amendments Act and its implementing

11

regulation is entitled to, the approval by Defendant of a live-in aide as a reasonable accommodation, so that he is afforded equal opportunity to use and enjoy his housing.

59.   Defendant refused to make such accommodation as required by the federal Fair Housing Amendments Act and its implementing regulation.

60.   Plaintiff's requested accommodation will not impose upon Defendant an undue financial or administrative burden or otherwise fundamentally alter the nature of Defendant's program.

61.   As a result of Defendant's violation of Plaintiff's rights under these provisions, Plaintiff will suffer irreparable injury if appropriate relief is not granted.

## SECOND CAUSE OF ACTION

### MINNESOTA HUMAN RIGHTS ACT, DISCRIMINATION ON THE BASIS OF DISABILITY

Plaintiff Torgerson realleges and incorporates herein by reference paragraphs 1 through 48.

62.   Plaintiff's rights have been violated by Defendant under Minnesota Statute § 363A.10 Subdivision 1 (2) which prohibits Defendant from refusing to make reasonable accommodations in its rules, policies, practices, or services when accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

63.   Under this provision, Plaintiff is entitled to protection as a disabled person, including the right to a reasonable accommodation, because he has an impairment that materially limits a major life activity.

64.   Defendant is aware of Plaintiff's disability.

65.   Plaintiff requested, and under the Minnesota Human Rights Act is entitled to, a

reasonable accommodation so that he is afforded an equal opportunity to use and enjoy his housing.

66. Defendant refused to make such accommodation as required by the Minnesota Human Rights Act.

67. Plaintiff's requested accommodation will not impose upon Defendant an undue financial or administrative burden or otherwise fundamentally alter the nature of Defendant's program.

68. As a result of Defendant's violation of Plaintiff's rights under the Minnesota Human Rights Act, Plaintiff will suffer irreparable injury if appropriate relief is not granted.

## THIRD CAUSE OF ACTION

## VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS

69. Instead of offering any specific proof to support its presumption that Collette Torgerson would be living in the same rental unit as Plaintiff if she were not providing him with necessary supportive services, Defendant has arbitrarily imposed on Plaintiff the burden of proving to Defendant's discretionary satisfaction that Collette Torgerson is not living in the same rental unit for purposes other than to provide the necessary supportive services.

70. Defendant has failed to bear its rightful burden of production and persuasion by initially presenting sufficient evidence to establish a prima facie case that Collette Torgerson is living in the same rental unit as Plaintiff for purposes other than to provide the necessary supportive services before imposing on Plaintiff the burden of producing evidence that Collette Torgerson is not living in the same rental unit for purposes other than to provide

13

the necessary supportive services.

71.     By failing to meet its burden of production and persuasion, and by instead arbitrarily

imposing the burden of production and persuasion on Plaintiff, Defendant has violated

Plaintiff's due process rights under the 14th Amendment of the United States Constitution,

and Plaintiff is authorized to seek redress, and does hereby seek redress, under 42 U.S.C.

§1983.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dave Torgerson requests relief as follows:

A.  That the Court assume jurisdiction over this cause of action;

B.  That the Court issue a temporary restraining order and preliminary injunction:

    1)  Enjoining the Defendant CDA from unjustifiably denying Plaintiff's request

    for a required live-in aide, and

    2)  Ordering  Defendant to approve Collette Torgerson as Plaintiff's live-in aide.

C.  That the Court declare that the Defendant has violated Plaintiff's rights under the Fair

Housing Act, Title VIII of the Civil Rights Act, 42 U.S.C. § 3604 *et seq.*, 24 CFR §982.316(a)

and the Minnesota Human Rights Act, Minn. Stat. § 363A.10, by refusing to approve a live-in

aide for him as a reasonable accommodation; and that the Court declare that Defendant has

violated Plaintiff's due process rights under the 14th Amendment to the United States

Constitution.

D.  That Plaintiff be awarded compensatory damages.

E. That the court award such other relief as appears appropriate and just under the

circumstances.

14

Dated: 8|14|09

**SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC.**

By: _____
Lisa Hollingsworth, 286163
Michael Hagedorn, 39387
166 E. Fourth Street, Suite 200
St. Paul, MN 55101
(651) 222-5863

## VERIFICATION

Dave Torgerson declares under penalty of perjury that he is the Plaintiff in the above action and that he has read the foregoing complaint and knows the contents thereof: that the same is true to his knowledge, except as to those matters therein stated on information and belief, and as to those matters he believes them to be true.

Dated: 7/28/09

Dave Torgerson